UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER BRUCE ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 14-cv-05137 BJR<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: September 12, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 15, 18, 19). After considering and reviewing the record, the Court finds that the ALJ properly evaluated the

medical evidence and plaintiff's credibility.  Accordingly, the Court recommends that the Commissioner's final decision be AFFIRMED.

## BACKGROUND

Plaintiff, CHRISTOPHER B. ANDERSON, was born in 1956 and was 53 years old on the alleged date of disability onset of October 9, 2009 (*see* Tr. 214-15, 216-31). Plaintiff has a two year Associates of Technical Arts degree (Tr. 38).  He has past work experience as a manager and solutions services engineer for a computer systems company and as a project manager supervisor for the Department of Information Services (WA) (Tr. 273-78).  Plaintiff's last job was as a customer services technician but he was let go because he could not perform the duties (Tr. 39).

According to the ALJ, plaintiff has at least the severe impairments of "fractures of a lower limb and chronic venous insufficiency (20 CFR 404.1520(c) and 416.920(c))" (Tr. 20).

At the time of the hearing, plaintiff was living in a small house with his significant other (Tr. 52-52).

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 68-76, 77-85, 88-97, 98-107, 108-18, 119-29). Plaintiff's requested hearing was held before Administrative Law Judge John Bauer ("the ALJ") on September 11, 2012 (*see* Tr. 33-65).  On October 26, 2012, the ALJ issued a

written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 15-32).

On December 12, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6).  *See* 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in February 2014 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on April 29, 2014 (*see* ECF Nos. 12, 13).

Plaintiff raises the following issues:  (1) Whether or not the ALJ erred in finding plaintiff not disabled from October 2009 through April 2011; (2) Whether or not the ALJ erred in rejecting the opinion of treating physician Robert Peterson, M.D.; (3) Whether or not the ALJ erred in evaluating the opinion of examining physician Paul Voeller, M.D.; (4) Whether or not the ALJ erred in finding plaintiff less than fully credible; and (5) Whether or not the ALJ's step four finding was supported by substantial evidence (*see* Plaintiff's Brief, ECF No. 15; Defendant's Brief, ECF No. 18, p. 3).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Whether or not the ALJ erred in finding plaintiff not disabled from October 2009 through April 2011.**

Plaintiff contends that because the ALJ accepted the opinions of his treating orthopedic surgeon M.B. Hendrix, M.D., and State Agency reviewing doctor Robert Hoskins, M.D., the ALJ should have found him disabled for the closed period from the alleged onset date of October 9, 2009 through April 2011.  For the reasons discussed below, the Court disagrees.

In September 2009, plaintiff injured his left foot in a motorcycle accident (*see* Tr. 324, 327).  In October 2009, he developed deep vein thrombosis in his lower left extremity (*see* Tr. 315, 318).  By April 2010, plaintiff was well enough to ride his motorcycle, and he was in another accident, this time injuring his lower right leg (*see* Tr. 328-29).  Approximately three weeks after Dr. Hendrix operated on plaintiff's right leg, Dr. Hendrix opined plaintiff could not stand, walk, carry, lift, push pull, climb, crawl, kneel, or crouch for 6-9 months due to his right leg injury (Tr. 354-57).  The ALJ accepted this opinion for the applicable time period (Tr. 25).

In July 2011, Dr. Hoskins reviewed the medical evidence and agreed with Dr. Hendrix's assessment (*see* Tr. 125).  Dr. Hoskins, however, found that plaintiff was currently able to perform sedentary work with additional postural and environmental limitations (Tr. 125-27).  Dr. Hoskins noted that a change occurred in plaintiff's condition in April 2011 when plaintiff reported being able to walk without a crutch (Tr. 120).  The ALJ credited Dr. Hoskins's opinion and based his step four finding on the

VE's testimony that a person with the limitations Dr. Hoskins assessed could perform plaintiff's past work (*see* Tr. 26, 36-38).

Plaintiff argues that Dr. Hoskins's opinion "can only be read to say that from the traumatic onset of disability in October 2009 up to April 25, 2011, when a change occurred, Plaintiff could not bear weight standing and had to ambulate with crutches" (ECF No. 15, p. 4). Plaintiff thus contends that when his September 2009 left foot injury, October 2009 deep vein thrombosis, and April 2010 right leg injury are considered together, he was disabled for a 12-month period.

There are two primary problems with plaintiff's assertions. First, Dr. Hoskins offered no opinion regarding plaintiff's functional abilities prior to Dr. Hendrix's opinion (*see* Tr. 120-28). Dr. Hoskins's silence does not give rise to a reasonable inference that prior to his right leg injury, plaintiff had the same functional limitations Dr. Hendrix assessed. *See* Social Security Ruling ("SSR") 86-8p ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence."). If anything, the fact that Dr. Hendrix assessed limitations based on plaintiff's right leg injury but assessed no limitations from plaintiff's left foot injury or deep vein thrombosis suggests that plaintiff's original injuries were no longer limiting as of May 2010.

Second, and more importantly, the regulations foreclose plaintiff's attempt to reach the 12-month duration requirement by combining the left foot injury and deep vein thrombosis with the unrelated right leg injury. To be found disabled, a claimant must be physically or mentally "unable to engage in any substantial gainful activity . . . for a

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). To reach the 12-month duration requirement, however, a claimant cannot combine the effects of two unrelated conditions. 20 C.F.R. §§ 404.1522(a), 416.922(a) ("We cannot combine two or more unrelated severe impairments to meet the 12-month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months."); SSR 82-52 ("Severe impairments lasting less than 12 months cannot be combined with successive, unrelated impairments to meet the duration requirement."). Because plaintiff's left foot injury and deep vein thrombosis were unrelated to his right leg injury, the ALJ did not err by failing to find that plaintiff was disabled from the onset of the deep vein thrombosis through his recovery from his right leg injury.

In his reply brief, plaintiff argues that the 12-month duration requirement for deep vein thrombosis is established by the opinion of his treating doctor Robert Peterson, M.D., who opined in November 2010 that, among other things, plaintiff cannot work in environments where physical injury or trauma is likely because of the anticoagulation medication he began taking in October 2009 (*see* Tr. 516). As plaintiff raised this argument for the first time in his reply brief, it is waived. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). But even if it were not waived, the ALJ provided at least one specific and

legitimate reason supported by substantial evidence for discounting Dr. Peterson's November 2010 opinions, as discussed below.

In sum, plaintiff fails to establish error in the ALJ's consideration of Dr. Hendrix's and Dr. Hoskins's opinions or in the ALJ's failure to find him disabled from October 2009 through April 2011.

**(2)   Whether or not the ALJ erred in rejecting the opinion of treating physician Robert Peterson, M.D.**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence:  If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d

at 599, 601).  The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).  However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In November 2010, Dr. Peterson examined plaintiff and found that his condition was unstable (Tr. 437).  He opined plaintiff could sit for eight hours in an eight-hour work day, but could not stand, lift, carry, crawl, stoop, or jump (Tr. 437, 517).  He also stated that plaintiff uses crutches to ambulate and that his condition would impair his work functioning for 12 months (Tr. 437-38).  Dr. Peterson did not have any reports from plaintiff's treating orthopedic doctors, but he "presumed" plaintiff would not be "allowed full weight bearing for several more months" (Tr. 517).  Dr. Peterson further opined, as

1   noted above, that plaintiff's anticoagulation medication prevented him from working in

2   an environment where physical injury or trauma was likely due to the risk of bleeding

3   (Tr. 516).

4        The ALJ gave Dr. Peterson's opinion limited weight because it was not consistent

5   with the record (Tr. 25).  Specifically, the ALJ pointed out that while Dr. Peterson

6   presumed plaintiff would not be allowed to fully bear weight on his right leg for several

7   months, his treating orthopedic provider had already instructed him to advance to full

8   weight bearing as tolerated (Tr. 25, 589-90).  The ALJ also noted that plaintiff was full

9   

10  weight bearing less than a year later, which was inconsistent with Dr. Peterson's opinion

11  that plaintiff's limitations would continue for 12 months (Tr. 25).  *See Magallanes,*

12  *supra*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for

13  drawing specific and legitimate inferences from the ALJ's opinion.").

14       An ALJ may properly reject a doctor's opinion because it is inconsistent with the

15  record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency

16  with the record properly considered by ALJ in rejection of physician's opinion); *Meanel*

17  *v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (ALJ may properly reject an opinion

18  that is conclusory and inconsistent with the record).  Indeed, plaintiff does not directly

19  argue that the ALJ failed to give specific and legitimate reasons for discounting Dr.

20  Peterson's contradicted opinion.  Rather, he asserts that the reasons the ALJ gave

21  "ignored the concatenation of impairments and limitations beginning in September 2009"

22  

23  (ECF No. 15, p. 6).  Plaintiff contends that even if he was weight bearing less than a year

24  after Dr. Peterson's opinion, this date was already more than 12 months after he injured

his left foot. Thus, according to plaintiff, the ALJ "did not refute the apparent continuation of disability, or inability to be weight bearing without crutches for more than 12 months" (*id.*).

Plaintiff's assertions fail to establish error. For the reasons provided by the ALJ, substantial evidence supports the ALJ's finding that Dr. Peterson's opinion was entitled to little weight because it was inconsistent with the record. The fact that the ALJ's reasons were not directed to the 12-month duration requirement does not invalidate the ALJ's specific and legitimate reasons. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error his harmless where it is "inconsequential to the ultimate nondisability determination") (citation omitted). Moreover, as explained above, plaintiff cannot combine two unrelated impairments to establish the 12-month duration requirement. As such, the ALJ's evaluation of Dr. Peterson's opinion was free of legal error and supported by substantial evidence. *See Bayliss, supra*, 427 F.3d at 1214 n.1.

**(3)     Whether or not the ALJ erred in evaluating the opinion of examining physician Paul Voeller, M.D.**

In March 2011, Dr. Voeller examined plaintiff and found that plaintiff was tender in the right foreleg and foot, had a small amount of edema in the right pretibial surface, had 5/5 strength in all extremities, "walks with a pronounced limp and uses a cane," and has normal gait and coordination (Tr. 442). The ALJ found that Dr. Voeller did not assess any functional limitations and thus his examination findings were of limited use in assessing plaintiff's RFC (Tr. 26).

Where a doctor's report does not assign any specific limitations or opinions in relation to an ability to work, an ALJ does "not need to provide clear and convincing reasons for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (quotations omitted). Plaintiff nevertheless contends the ALJ erred because Dr. Voeller found that he had difficulty with ambulation and needed a cane. Although plaintiff proposes one reasonable reading of Dr. Voeller's opinion, the ALJ's reading was also reasonable. *Morgan, supra*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (*citing Andrews, supra*, 53 F.3d at 1041). Dr. Voeller noted that plaintiff used a cane, but he did not state that plaintiff required a cane (*see* Tr. 442). Indeed, as the ALJ noted, Dr. Voeller also found that plaintiff had a normal gait and coordination, which suggests that plaintiff could ambulate without a cane (Tr. 26, 442). *See Magallanes, supra*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Accordingly, the ALJ reasonably found that Dr. Voeller did not assess any functional limitations. Plaintiff fails to establish error with respect to the ALJ's consideration of Dr. Voeller's opinion.

**(4)    Whether or not the ALJ erred in finding plaintiff less than fully credible.**

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample, supra*, 694 F.2d at 642 (citation omitted). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)).  Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment."  *Fair, supra*, 885 F.2d at 603.  The ALJ may "draw inferences logically flowing from the evidence."  *Sample, supra*, 694 F.2d at 642 (citation omitted).  However, an ALJ may not speculate.  *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons."  *Reddick, supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan, supra*, 169 F.3d at 599); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen, supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable

impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit then a claimant's testimony as to the severity of symptoms based solely on a lack of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell, supra*, 947 F.2d at 343, 346-47 (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).

Although an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, *Bunnell, supra*, 947 F.2d at 343, 346-47 (*citing Cotton, supra*, 799 F.2d at 1407), an ALJ may discredit a plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995). In *Johnson*, the Ninth Circuit reasoned as follows:

> Here, the ALJ with clear and convincing reasons properly declined to rely on testimony pertaining to current levels of pain long past the relevant insured period. *(Internal citation to Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)). The ALJ repeatedly noted that in spite of her admonition to restrict the testimony of pain to the period between 1981 and 1986, the claimant persisted in testifying to recent pain rather than pain she experienced before the expiration of her insurance. This testimony could not support her claim.
>
> The ALJ also identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony. We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence. (*Internal citation to Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984)).
>
> In addition to the inconsistencies within claimant's testimony, the ALJ noted the absence of medical treatment for claimant's back problem between 1983 and October 23, 1986, suggesting that if the claimant had

>actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time.

*Id.*

In this case, the ALJ gave several clear and convincing reasons for discounting plaintiff's credibility: (1) plaintiff was not consistently compliant with treatment recommendations; (2) when plaintiff did comply with treatment, his symptoms resolved; and (3) his daily activities were not as limited as one would expect given his complaints (Tr. 24-25). *See, e.g.*, *Tommasetti, supra*, 533 F.3d at 1039 (ALJ appropriately considers an unexplained or inadequately explained failure to follow a prescribed course of treatment); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Thomas, supra*, 278 F.3d at 958-59 (ALJ appropriately considers inconsistencies or contradictions between a claimant's statements and his activities of daily living).

In challenging the ALJ's adverse credibility determination, plaintiff does not contend that these reasons lack the support of substantial evidence. Instead, plaintiff asserts that "the critical subjective claim was Plaintiff's inability to stand or walk sufficiently to sustain even sedentary work for at least the period from October 2009 through April 25, 2011," and that the reasons the ALJ provided were not relevant to this period of disability (ECF No. 15, p. 7). Even assuming plaintiff's arguments are true, they do not establish that the ALJ committed harmful error in his credibility determination. The Court's role is to determine whether the ALJ's decision is free of

legal error and supported by substantial evidence. *See Bayliss, supra*, 427 F.3d at 1214 n.1. As the ALJ gave several clear and convincing reasons supported by substantial evidence for finding plaintiff less than fully credible, the ALJ satisfied this standard. Plaintiff does not establish error in the ALJ's credibility determination.

**(5)      Whether or not the ALJ's step four finding was supported by substantial evidence.**

Plaintiff argues that the ALJ's erroneous consideration of the medical evidence and his credibility resulted in error at step four. Because the Court has found no such error, plaintiff fails to establish that the ALJ's step four finding is not supported by substantial evidence.

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED**. **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

//

//

1  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2  matter for consideration on September 12, 2014, as noted in the caption.

3       Dated this 15th day of August, 2014.

                                          J. Richard Creatura
                                          United States Magistrate Judge